Good morning, everyone. We are delighted to see all of you here gathered today for oral argument. We are going to begin with our first case of the morning, Appeal Number 24-15-22, United States v. Walker. We have Mr. Schultz's remote, and do we have Ms. Arshi? When you're ready, Mr. Schultz. May it please the Court, Counsel for the Government, Todd Schultz, Assistant Federal Public Defender, representing Defendant Appellant Richard Walker. District Court in this case erred in denying Defendant's motion to suppress evidence which was obtained during a warrantless search of a trailer where he was an overnight guest. The two warrantless searches of Defendant's son's bedroom exceed the permissible scope of a protective sweep under buoy. The homeowner's later consent to a third warrantless search was tainted by and the product of these earlier illegal searches. In Maryland v. Buoy, the Supreme Court recognized two types of protective sweeps. First allows officers to look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Mr. Schultz, question. Should we first deal with whether or not we have standing to go down this path, seeing that the argument was raised that there's no privacy interest? Your Honor, I'm happy to address that. Your Honor, overnight guests undoubtedly, unquestionably, have standing to dispute a search at the residence they're staying at. This is well-established black-letter law. The United States Supreme Court has made that clear in Minnesota v. Olson. That case, I think the court essentially says an overnight guest has standing to challenge a search. We need say no more. So I was surprised that this is an issue of dispute between the parties. I had known there would be a number of things that we would disagree about. But this is black-letter law. And I would just point, in the government dispute in its brief, disputing standing, it does not mention the dispositive case. It does not cite to Minnesota v. Olson. And so I don't see this, although the government raises it in its brief, I don't see it as being an issue. I see it as being very clear-cut that the Supreme Court has said individuals like the defendant who are overnight guests have standing. Mr. Schultz, do you want to respond to the government's argument that essentially there should be a carve-out and that we should establish a carve-out for someone who's under court supervision who may or may not be in violation or who may be in violation of those supervision requirements? Your Honor, I don't think that the Supreme Court's ruling on this could be any clearer. The Supreme Court says that it's enough that the person is an overnight guest. I think the cases, one in particular that the government references, involves a domestic situation where the person is specifically excluded from the address to be searched. That's not the circumstance here. And I don't know, Your Honor, because the record is extremely limited, whether in fact Mr. Walker was prohibited from staying at the address where the search was undertaken. I know that wasn't the primary residence. I don't believe it was. But I also don't know that that location would have been prohibited based on the evidence in the record that's before the court. Counsel, there was a pretrial release condition that he was on home incarceration at his mother's house, correct? Your Honor, I know that the government argues that in looking through the record preparing for this. I don't know that that's in the record. If I'm mistaken on that point, it would not change my position that he's not prohibited, although he would be required to stay at a certain address. He has, pursuant to Minnesota v. Olson, this expectation of privacy where he sleeps. Mr. Schultz, excuse me, did you request an evidentiary hearing on this motion to suppress? Your Honor, I did not. And as the case has been pending, I've gone back and forth as to whether that tactical decision was a wise one. I guess maybe because I'm arguing today I've come down on the side that it was. The reason that I think it was a wise decision is because the government bears the burden in the context of a warrantless search as with respect to a buoy sweep to point to specific articulable facts that justify the search. And by limiting the record to only the two officers' reports, Officer Blackburn and Agent Green, I believe that benefits the analysis for the defendant because, as the court knows, there are no specific facts in either of those reports about the residents or what they saw there that would warrant them lifting up a mattress and looking between a mattress and a box spring. On the question of standing, though, because you didn't file a reply, isn't this waived, the path that we're headed down? Because I didn't file a reply to what? You didn't file a reply at all, correct? In front of this court, Your Honor? Yes. That's correct. What issue is it that the court believes I have waived? That's what I was, on the question that was raised regarding standing. The notion being that the government has now misinterpreted the case in regards to privacy rights of an overnight guest. Right, Your Honor. I did not file a response to that because well-established Supreme Court law says that that's not the law. And so, to me, and it appears I may be mistaken, but it seems to me Minnesota v. Olson would trump a argument made by the government and rejected by the district court. And so I didn't spend much time in my brief because I am confident that as a matter of law, the Supreme Court has the last say on this. And the Supreme Court has said, no limitations. If you're an overnight guest, that's enough. It doesn't say if you're a certain type of overnight guest or have any kind of cutouts. The Supreme Court simply indicates in Minnesota v. Olson that, in fact, the individual has standing as an overnight guest. I'd like to, if it's permissible, I'd like to address the buoy sweep argument and the searches, which are at the heart of, I believe, to be at the heart of this appeal. This case does not involve the first type of buoy sweep that does not require probable cause or reasonable suspicion. This case involves the search of an interior room in the trailer. Common sense tells us, and we know, that it's not immediately accessible to an arrest that occurs outside. Because this is not an immediately adjacent area, the search isn't automatic. They don't get to walk through the entire house in circumstances like this. They must show articulable facts, which, taken together with rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors individuals posing a danger to those on the arrest scene. It's not a full search of the premise, and it extends only to a cursory inspection of spaces where a person may be found. I think importantly for this case, the second type of buoy sweep is not an occupancy check. Police don't get to perform a sweep just because they think someone might be inside. They need to have specific and articulable facts that would indicate someone is inside, not just that there might be. Because if it's otherwise, there could always be one more person in a house. And so what would then happen is the second buoy sweep would go away. It would become automatic that they could always go inside again. Because who knows? There could always be one more person in the home that's unaccounted for. Counsel, I want to make sure I understand what you're classifying as the first and the second protective sweep. Yes, Your Honor. The first sweep, which is not an issue in this case, is a sweep that requires no reasonable suspicion and is automatic. It extends to places immediately adjacent to the place of arrest. This is an arrest that occurred outside, but we're not certain on where it occurred outside, but we know it occurred outside. So there's no way in which this interior room, a bedroom, could be deemed to be immediately adjacent. So I just want to make sure I'm following your argument. The contention is there was not a search incident to an arrest on the outside. Once you went into the house, it's elevated now to a protective sweep. Right. And, Your Honor, what I'm suggesting is that they don't have, it's not automatic that they get to go in. And it's even, I should say it's not automatic that they can go beyond immediately adjacent areas. And in this case, they go into the interior of the home and they reference no specific facts that would justify them in thinking that there was another individual present or that that individual posed some kind of danger. And so I'm saying as a practical matter, they don't even get to go into the bedroom. I'm sorry. And then beyond that, in lifting up the mattress and looking between it and the box spring, they're clearly not engaged in a buoy sweep. Because it is not physically possible for a human being to hide between a mattress and a box spring. And what I think is probably the best evidence on this point that they weren't in fact looking for a human being is the photos themselves. The photos in this case clearly show. What do you do with Walker Jr. statements, though? Before you get to the bedroom. That he doesn't know who else is in the house. Yes. Yeah. So what I'm suggesting to your honor is the simple fact that there might be someone in the house is not enough. And it's my belief, your honor. And in my experience, officers don't rely on what people say coming out of a home. The way it works practically and the way it worked in this case is they go in and, you know, there's no reason to think that law abiding citizens in a home. And all indications are that the occupants of this home were a lot of law abiding, with exception of the man who was in custody, that those were law abiding individuals. And so it's a real jump in my mind to suggest that somehow law abiding citizens who actually, of course, as we now know, weren't home, that they pose some kind of risk. It's not enough to say someone might be home. So we get to search the whole house. Your honors, I realize that I'm into my rebuttal time, so I would like to reserve the remainder of my argument for rebuttal. Very well, Mr. Schultz. Thank you. We welcome Ms. Arshi to the podium. And you can correct my pronunciation when you arrive. May it please the court. Good morning, your honors. My name is Kim Arshi, and I represent the government aptly in this case. As a threshold matter, this court should deny the defendant Richard Walker's appeal and affirm the decision of the district court because Richard Walker did not have a reasonable expectation of privacy in the residence, and the court should reject his Fourth Amendment claims to suppress both the firearm and the drug evidence in this case. Ms. Arshi, I have a question, and the same one that I posed to your opponent, which is the pretrial release conditions. Are they in the record? They are in the record in the sense that the defendant acknowledged them in his interview. The officers were aware of them and incorporated them in their reports. The actual pretrial release order from the county judge that included those conditions are not included in the record, but the defendant conceded in his interview with police that he was on pretrial release. He was supposed to be residing with his mother at a different residence in a different city, and he was not permitted to leave that home as he was on house arrest. So that is the way that that pretrial condition is in the record. The court should find that although Richard Walker was an overnight guest, he had no legitimate expectation of privacy in that he was there in violation of the court order, and to grant that Richard Walker has standing in this appeal, he would be rewarded with more expansive Fourth Amendment rights by the nature of violating a court order than he would be if he were in compliance with a court order. If he were in compliance with a court order, he should not have been present at that residence and should not have privacy. Why would this be the case for us to expand the Supreme Court's overnight guest jurisprudence in that direction where we have the situation where the record is, you're asking us to draw these kind of inferences from the record and where there was no evidentiary hearing and the district court did not pass on all of this below. Why is this the case to push where you would like us to push? Although the court order is not in the record, I think the record is substantial for this court to make this finding because it's not disputed. The defendant himself said in his interview that he was on house arrest and he was on these conditions. So I think this record is sufficient to make that finding because there is no dispute. Although that order is missing from the record and although that there was no evidentiary hearing, there was no evidentiary hearing because there was no disputed fact at the time that we were filing the motions. And so because there was no disputed facts at the time we were filing the motions, the evidentiary hearing wasn't necessary. Two things on this issue of standing. Did we raise this below in regards to the bedroom and I guess Walker Jr.'s bedroom and Paulette's bedroom was standing limited to only Paulette's bedroom? How did it work below? Below the government raised the argument that the defendant was excluded from asserting a privacy right to his son's bedroom and the household as a whole. The government did not address Paulette's bedroom specifically in the district court, but it is incorporated within the argument that he has no privacy right to the home. If there are no other questions on the expectation of privacy, if the court reaches the question of the constitutionality of the protection... I guess I do have one follow-up question. The cases that government cites to, it's pretty focused on cases where you or the individual was legally not permitted to be there. And so going to just Judge Jackson-Hughes' question, is this stretching it a little bit further when we have Shipp who has not contested Walker's legal right to be in the premise? And so the eviction cases, it was illegal for you to be there. And so just wanted to kind of flush that out a little bit more. Sure. The best analogy for this situation are the civil orders of protection cases. And in those cases, although a defendant in that circumstance was specifically excluded from a certain home, the consent of the petitioner in the order of protection had no bearing on whether the court found that the privacy right attached or did not. So the consent of the homeowner does not override the court order from that line of cases. And I think that analogy can be applied here as well. All right. If the court does reach the question of the constitutionality of the sweep, the court should affirm the district court's finding that the protective sweep was constitutional. The protective sweep into the residence after Walker's arrest was necessary to ensure the safety of the agents involved because two residents of the home were unaccounted for. These are not purely speculative. At this point, when the officers went to the home, they knew that these two other individuals resided there. They knew that these two individuals had not presented themselves to the officers when they arrived at the scene. Can you point us to any cases that say as long as someone else could be home, could, a possibility, not a specific and articulable fact that they might certainly be in there, that officers can go in. And also, can you point us to any cases where someone's arrested outside and police decide they need to go inside to conduct a protective sweep? Your Honor, I'll take your second part of the question first. As far as the assertion that the defendant was arrested outside of the home, it is a little bit more nuanced in that, in that he was arrested right at the threshold to the home, right at the front door. The front door of the home was open. They observed Walker after some time, after many call-outs, after repeated asks for him to come to the front door. They observed him walk to the front door from that hallway and then present himself for arrest. He did not, he was not arrested fully outside the home. He was arrested right at the threshold to the home and the officers observed him coming to the door. And as far as your, the first part of your question, there, I cannot think of a specific case that just says the possibility of presence, but the line of cases all say as long as there is a reasonable and a specific articulable fact that, and reasonable inferences that can be taken from those facts, which I think is an important thing that the appellant has ignored in this argument, is that it's not just the specific facts articulated by the officers. It's also all those reasonable inferences that law enforcement take that can come into their analysis. But take Mr. Schultz's point that someone can always be home. Someone extra can always be home. And you look at our case in Tapia. There, the arrestee was arrested, as best we can tell from the opinion, in the threshold, okay? At the threshold of the home. The police noticed a Lincoln Navigator that they had not noticed before outside, and they knew that one of Mr. Tapia's associates, a fellow gang member, owned a Lincoln Navigator. That's what they asserted as articulable specific facts that they then needed to pass the threshold and go into the home to look for this potentially associate gang member who was an individual who could pose a risk. Here, by contrast, we have people who the police know that two other people, as Mr. Schultz is saying, for all they know are law-abiding people who also live in a home. Because you know what? Homes contain multiple people at times. Can you address his argument on that and the distinction with Tapia? Yes, Your Honor. I think the court needs to look no further than Marilyn B. Bowie to answer this question. In that case, the court found that earlier in the day, a police employee had called Bowie's residence and spoken to a woman. When they arrived at the residence to execute the arrest warrant, the woman did not present herself. That was part of the specific and articulable facts that the court took into consideration when analyzing whether the protective sweep was justified. There was no information in that record that that woman was not law-abiding, just that she was merely present at the home earlier in the day. I'd like to address the further specific articulable facts because they're not just limited to the presence of the residents who weren't already home. The officers were also aware of the pending charges that Mr. Walker had absconded from St. Clair County Court from. This was unlawful possession of firearm ammunition by a felon. I think one of the reasonable inferences from that charge is that ammunition goes into a firearm and it was very possible that Mr. Walker was in possession of ammunition because he also had a firearm. Counsel, I'm going to have to stop you there. That's a little bit of a stretch to suggest that ammunition alone, without there being attached to a firearm, poses a risk that justifies going in for safety purposes. That's the purpose of a protective sweep, something that can put the officers at risk. I want to really direct our attention not to, if we can, move beyond that to tell me what allowed those officers during a protective sweep, if we accept the argument, to lift that mattress. What are those facts? Yes, Your Honor. The officers, the two reports that are submitted to the court and in the record, both officers from different law enforcement agencies stated that in their training and in their experience, people who are trying to hide themselves from law enforcement do hide in unexpected places. Each of them noted in their reports that they had experience with people hiding underneath mattresses, in clothing dryers, in all kinds of places you would not expect to find a person. The district court relied on those officers' assertions in their report. The district court found those credible and found that that was sufficient in order to lift the mattress. One difficulty we have here is there's a photo in the record, and the photo shows us this mattress that they lifted, and it's above the box screen. Okay? And so we have to judge the reasonableness of the officers looking at that exposed mattress. There was no comforter over it or cover or anything, and the government has not said that this photo does not represent the scene as the officers saw it. So we have to judge the reasonableness of looking at that exposed mattress on top of that exposed box screen and lifting it up thinking that there's a person in between the two items. Your Honor, to that point, I would just say that the district court reviewed this and made the finding, and it's a factual finding, that a person could hide between the mattress and the box screen, and that is only for clear air review by this court. And the district court did not clearly err in making that finding, and so— What did it base it on? What facts? The district court had the photographs available to him, and so the district court reviewed those photographs along with the reports provided, the agent's assertions in their reports, their comments on their experience, their training, and found that it was a reasonable and logical conclusion that the officers would think it was necessary to look there for somebody hiding— Unless we're looking for Flat Stanley, I'm still wondering what are the facts that support, generally, yes, there's—generally, people can hide in a dryer. Generally, people can hide under a bed frame that's lifted up of a box screen, okay? What are the facts, though, that supported, going from the generality that in the past people have hid there, of the facts that supported someone was hiding between this box screen and mattress for the district court in this case? I don't think there are any additional to what I've already provided the court and what the district court noted in its review of the evidence available in the record. Simply, the district court was able to see the photos and able to review those same reports. And until you lift a mattress off a box screen, you don't know whether it's hollowed out, whether there's a compartment, what's there. And so until an officer takes those steps to ensure their safety, there's really no way for them to know what may be lurking underneath a mattress. I guess what are the contours of whether the protective sweep is now going beyond that, right? When you're lifting up mattresses, when you're going beyond the—without articulating the why. And so if we accept this is the rule or the standard, where is the line drawing for officers to know when the protective sweep has kind of gone beyond that of an articulable risk to safety? I think the court doesn't really need to expand the current law that is available. As long as an officer has a reasonable and articulable and specific facts about the scenario, about their training, about their experience that describes why they do certain things during a protective sweep. And a court looks at those, a district court looks at those and finds those things credible. I don't think it requires any expansion of the current law into what is allowed in a protective sweep. Ms. Arshi, in your brief, you argue that the sweep was long over. I'm quoting from your brief. Quote, was long over, end quote, by the time the homeowner arrived at the scene. Exactly how long had it been? Your Honor, that's not clear from the record. We know from the officer's reports and the other information we have from the interviews on scene that it was completed. All of the protective sweep was completely over. Everybody was outside the residence by the time that the homeowners arrived home. I see that my time has run. There are no other questions. I just asked the court to affirm. Thank you. Thank you. And Mr. Schultz, you can have your full four minutes. We took Ms. Arshi over. Thank you, Your Honor. I appreciate that. Real quickly, I hope the court will take some time and re-look at those photographs because you could absolutely tell no one was hiding in that box spring because that box spring, despite this is one point where the district court clearly aired, that box frame is on a frame underneath it. So they could have looked underneath the box spring without lifting the mattress, and that is clear from the photos. I'd like to real quickly because we've spent all this time talking about the first warrantless search. I don't think it would be fair to my client not to briefly address the two other warrantless searches that took place. And so what I think this court could focus on is the second warrantless search of that bedroom, and that is done by Agent Green, and there is no buoy sweep involved. When Agent Green, without a warrant, lifts up that mattress, he's not looking for somebody under that mattress. He's looking for evidence. And so this court can just address that second search and say clearly there's no exception to what Agent Green did. The proper practice in that situation is to obtain a warrant. And the other thing I would point out, Your Honor, is if an individual during a buoy sweep sees a firearm in a residence, that firearm is not automatically seizable under the plain view doctrine because firearms are not contraband per se. They don't have an immediately incriminating nature. In fact, millions of Americans legally possess the exact firearm in this case. And what the officers were required to do at that point was to seek a search warrant or consent to seize that firearm. If Agent Green accepts, Mr. Schultz, that this was a violation, why would the exclusionary rule, good faith, not apply? Well, I don't think that the good faith is the analysis that I think the court should apply. I think the analysis the court should apply for the gun, Your Honor, is the inevitable discovery. Before I get there, I want to first have you answer my question. Why would the good faith exception not apply? Your Honor, when I've seen the good faith exception apply, I've seen that apply in the context of applications for search warrant. I've not seen it apply to a warrantless search of a home and certainly not one of this nature. What I would note, though, I wanted to just mention, Your Honor, real quickly, this court's some dicta from this court in lists. One of the things I try to do when I have an argument before the court is if I can hopefully find another case from the court that is directly on point, that's extremely helpful for me. And so I just want to read this portion of lists which this court decided which addresses this specific situation. The court in that case was concerned exactly about the police practice that is routinely employed and was employed in this case. And in that case, the court said, quote, the police could, of course, exploit illegally obtained knowledge to coerce an individual into providing consent for another search. Such a danger would seem to loom larger where the illegal search in the subsequent consent search were of the same location. The defendant's consent in that instance, the defendant's consent could be influenced by the belief that there is no reason to withhold consent because the officers had already searched the location, end quote. That is this case exactly. That's what the affiant, the person who consented, said happened. And so the gun should be suppressed with respect to the additional evidence that was obtained. That should also be suppressed because consent was given immediately afterwards and at the same location. Do you agree that the argument was forfeited? No, Your Honor. No, that that argument was made in the district court. That argument was raised, I think, in point five in our brief. I'm talking about the drugs. The drugs. Is that what you're referencing? Yes, ma'am. We've argued both in the district court and then I think it's like the final portion of our appellate brief that those would be suppressible, that the court should apply the attenuation doctrine and applying those three factors conclude that that the exception does not apply. Finally, I would just say, Your Honor, just real quickly that both those tests, the attenuation doctrine and the inevitability, inevitability, discovery doctrine address the same issue. They're trying to answer the same question. And that question is, was the voluntary consent obtained by exploitation of the preceding Fourth Amendment violation or instead by means sufficiently distinguishable to be purged of the primary tank? And here are the only reason the only evidence before the court on this issue is that this homeowner consented because of the illegal search. It was intentional that they informed her of it. They knew it would give them a better opportunity to obtain consent, and they used this flagrant misconduct to get her to consent. All evidence was sought to be seized before the district court. That's what we're asking that this report would do as well. All right. Thank you, Mr Schultz. We will take the case under advisement.